**LEWIS AND WIFE v. BOSKINS, Adm'r, Etc.**

TITLE BOND—*Effect of contract.*—Where land is sold on a credit and bond is given to make title on payment of the purchase money, the effect of the contract is to create a mortgage, the same as though the vendor had conveyed the land by an absolute deed to the purchaser and taken a mortgage back to secure the payment of the purchase money.

LIEN OF—*Against whom a charge.*—The lien, created by a title bond, exists as a charge or incumbrance on the land, not only against the purchaser, his heirs and other privies in estate, but against all subsequent purchasers.

PURCHASER IN POSSESSION—*Cannot deny vendor's title.*—A purchaser, entering into possession under his contract of purchase, cannot, so long as he retains such possession, deny his vendor's title.

EXECUTORY CONTRACT—*Where purchase of better title by vendee, etc.*—A person in possession, under an executory contract, buying in a better title than his vendor's, can derive no advantage from it against the vendor, and the same will inure to the benefit of the vendor, under whom he entered, and all that he can demand is the sum he paid for the better title, with interest.

OBLIGOR—*When discharged from performance.*—If the obligee does anything to obstruct or prevent the obligor from performing his part of the contract, the obligor is discharged from his obligation to perform it; the contract, in legal effect, is, on his part, performed, and he may demand performance at the hands of the other party.

APPEAL FROM ST. FRANCIS CIRCUIT COURT.

HON. WM. STORY, *Circuit Judge.*

*Watkins & Rose,* for Appellant.

We submit that the half interest of the sister in the lands having been conveyed and fully paid for, the court erred in decreeing that the administrator of Brown had a lien upon *all* the lands. *Bailey vs. Greenleaf,* 7 *Wheat,* 50. At most, Brown was only an agent for his sister's interest in the lands, and neither an agent or trustee could have a vendor's lien. *Burr vs. Robinson,* 25 *Ark.,* 281.

*B. C. Brown,* for Appellee.

HARRISON, J.—William F. Brown and his sister, Martha P. Seaborn, wife of John M. Seaborn, owning jointly a tract of

land in St. Francis county, the said William F., in the year
1858 or 1859, with the consent and concurrence of his sister
and her husband, sold the same to John Castleman for $2100.
Castleman, at the time of the purchase, paid $1000, and gave
Brown his note for $1100, payable at a future day, but when
does not appear, and took from him a bond obliging himself
to make him a deed of conveyance upon its payment, and,
under his purchase, entered into the possession of the premises.
Brown paid Mrs. Seaborn one-half of the price for which he
sold the land, except $379, and he agreed and assumed to pay
that. Brown died in 1861; whether before or after the matu-
rity of the note, the record does not show, but leaving it
unpaid, and without having conveyed the land and without
having paid the balance due Mrs. Seaborn.

There being, in consequence of the war, no administration
upon his estate for several years after his death, the note
remained, the meanwhile, in the hands of his widow, Marga-
ret E. Brown, and whilst she had it in her possession, and on
the 20th day of February, 1863, Castleman applied to her to
allow him to take it up, and give in lieu of it, a note for
principal and interest to herself, to which proposition she
assented, and he executed a note for $1170 to her, payable
one day after date, bearing ten per centum interest, and she
thereupon gave up to him the other. Castleman, on the 28th
day of March, 1863, sold the land to Oliver Lewis, and delivered
him possession. As part of the consideration of his purchase,
Lewis agreed to pay Castleman's note to Mrs. Brown, and to
that end he paid the $379 due Mrs. Seaborn by Brown's
estate, and had the same indorsed as a credit upon the note,
and Mrs. Seaborn and her husband, on the same day, executed
a deed of conveyance for her undivided half of the land, at
his instance, to Eliza C. Lewis, his wife.

Administration was afterwards granted upon Brown's es-
tate, and the administrator brought this suit against Lewis
and his wife, the heirs of Brown, who were infants, and other
proper parties, to enforce his lien for the remainder of the

purchase money, and, upon the facts as thus substantially presented by the pleadings and the proof, the court decreed that the Lewises should pay to the plaintiff the sum of $1324 32; that the land should be charged with the payment thereof, and that in default of payment, by a day named, the land should be sold, etc.

From this decree Lewis and wife have appealed to this court.

As Mrs. Brown was not the administratrix of her husband, nor the legal representative of his estate, and acted wholly without authority in surrendering to Castleman his note and taking the other in lieu of it, the latter did not operate as a payment or discharge of the former, nor in anywise affect the rights of the plaintiff, in respect to the unpaid purchase money, and his lien upon the land for the same.

The law is well established that when a vendor sells land upon a credit, and gives the purchaser a bond to make him a title upon the payment of the purchase money, the effect of the contract is to create a mortgage, as if the vendor had conveyed the land by an absolute deed to the purchaser and taken a mortgage back to secure the payment of the purchase money. *Smith vs. Robinson,* 13 *Ark.,* 533; *Moore & Cail vs. Anders,* 14 *Ark.,* 628; *Graham vs. McCampbell, Meigs,* 42; *Tanner vs. Hicks,* 4 *S. & M.,* 294. Such being then the nature of the contract, it is manifest that the lien, so created, exists as a charge or incumbrance on the land, not only against the purchaser and his heirs and other privies in estate, but also against all subsequent purchasers. *Smith vs. Robinson, supra; Moore & Cail vs. Anders, supra; Shall vs. Biscoe,* 18 *Ark.,* 142; *Pintard vs. Goodloe, Hemp.,* 502; *Thredgill vs. Pintard,* 12 *How.,* 24. But the appellant insists that no lien ever subsisted in favor of Brown or his administrator upon the half of the land that Mrs. Seaborn owned, and that, if there ever was such a lien, it was discharged or lost by her conveyance to Mrs. Lewis, which rendered it impossible for his heirs to perform his agreement in respect to the conveyance of that part of the

land, and it would, therefore, be inequitable to call upon them to pay for her half of the land, when they could not perform his contract to convey it. Leaving out of view Lewis' agreement with Castleman to pay the note to Mrs. Brown (given as was intended by him in lieu of that he had given for the land), and under which he obtained the possession from Castleman, as well as the historical fact that bonds for title originated in and came into common use through the inability of the vendor, under the land system of the United States, to make title at the time of the sale, we find a conclusive answer to this claim of immunity from the demand of the plaintiff, in the well known rule of law, that a purchaser, entering into possession under his contract of purchase, cannot, so long as he retains such possession, deny his vendor's title. *Pintard vs. Goodloe, supra; Willison vs. Watkins*, 3 *Pet.*, 43; *Wilson vs. Weatherly*, 1 *Nott & McCord*, 373; *Meadows vs. Hopkins, Meigs*, 181. If the vendor is unable to convey the title and he would rescind the contract, he must restore the possession and do so entirely. He cannot enjoy the property and refuse to pay the price. *Thredgill vs. Pintard, supra; Pintard vs. Goodloe, supra; Wilson vs. Weatherly, supra; Willison vs. Watkins, supra*. And the conveyance, so far from taking the case out of the rule, or affording a protection against the lien, gives occasion for the application of another rule, a corollary of the former, which may be thus stated. A person in possession, under an executory contract of purchase, buying in a better title than his vendor's, can derive no advantage from it against the vendor, and the same will inure to the benefit of the vendor under whom he entered, and all that he can conscientiously demand is the sum he paid for the better title, with interest. *Pintard vs. Goodloe, supra; Thredgill vs. Pintard, supra; Searcy vs. Kirkpatrick, Cooks (Tenn.)*, 211; *Mitchell vs. Barry*, 4 *Hayw.*, 136; *Meadows vs. Hopkins, Meigs*, 181.

In the case, before us, Lewis claimed a credit on his purchase from Castleman for the amount paid for Mrs. Seaborn's

title, and he received an allowance for the same in the decree.

Equally unavailing is the objection that there cannot be a complete performance of Brown's part of the contract, since Mrs. Seaborn has conveyed her interest in the land to Mrs. Lewis. That conveyance was made at Lewis' instance, and it is a familiar and well settled principle, that if the obligee shall do anything to obstruct or prevent the obligor from performing his part of the contract, the obligor is discharged from his obligation to perform it; the contract on his part is, in legal effect, performed, and he may demand performance at the hands of the other party. _Bac. Abr._, title, "_Conditions,_" _Letter Q_, 3; 3 _Com. Dig._, title, "_Condition,_" _L. C._

There is no error in the decree and the same is affirmed.