DAVIE *v.* DAVIE.

Opinion delivered March 5, 1892.

1. HUSBAND AND WIFE—MARRIED WOMAN'S POWER OF ATTORNEY.—
   A conveyance by a married woman, by an attorney in fact, of
   all her interest as heir in a certain estate, consisting of real and
   personal property, cannot be avoided as to the personalty on the
   ground that, as a married woman, she is not authorized to con-
   vey by attorney.

2. GUARDIAN AND WARD—UNLAWFUL SALE OF WARD'S LAND—LACHES—
   Where a guardian sells the land of an infant ward without au-
   thority, and the money is applied to the ward's use, the fact that
   the ward does nothing to disaffirm the sale for nearly seven years
   after she became of age must be deemed a ratification of the sale.

3. WILLS—SUFFICIENCY OF PROBATE—Where a will is admitted to
   probate by the clerk of the court in vacation, and the court sub-
   sequently causes an order to be entered, reciting that the will has
   been fully proved before the clerk, and that the same is approved
   by the court, this is, in effect, an order of probate, and not merely
   an order approving the action of the clerk.

4. VENDOR AND PURCHASER—EFFECT OF EXECUTING BOND FOR TITLE.—
   Where an owner of land gives a bond for a deed on the payment
   of the purchase-money notes, and places the purchaser in posses-
   sion, he holds the legal title only as security, and on his death
   the land does not decend to his heirs.

Cross-appeals from White Chancery Court; *David
W. Carroll,* Chancellor; reversed.

This was an action of ejectment brought by E. N.
Davie and others against J. M. Davie. From a judg-
ment for plaintiffs, both parties appeal.

The other facts fully appear in the following state-
ment by HEMINGWAY, J.:

The plaintiffs sued to recover undivided interests
in land, which they claimed to have acquired as the heirs
of J. C. Davie. The defendant resisted the recovery on
the ground that J. C. Davie did not die seized of the
land, but had sold it in his lifetime to persons from
whom the defendant acquired title. He alleged that
J. C. Davie had executed bonds conditioned to convey
title upon payment of the purchase money; and placed
the purchaser in possession, and that thereafter, in

March, 1870, the said J. C. Davie having died, his widow bought the lands from the obligees in the bonds, and took assignments of said bonds. He further alleged that the said J. C. died the owner of the notes given for the purchase of the land, and that said notes came into the hands of the administrator of said J. C., and were duly listed as a part of his estate in the inventory filed by the administrator; that the distributees of the estate, including the plaintiffs, sold to the widow all their interest in said estate, including the notes, and that said widow thereby, and by virtue of her right to dower, became entitled to the notes; that the administrator, believing her to have the sole right to said notes, surrendered them to her before she purchased the land from the obligees in the bonds of her husband; and that in said purchase she surrendered the notes to said obligees, and by assignment of said bonds acquired the equitable title to the lands, free from the lien of the notes. He further alleged that the widow died testate in 1881, and by her will devised the lands to him. He made his answer a crossbill, and prayed that the plaintiffs be required to convey to him the legal title to the land, or, in case that be denied, that they be required to refund the several sums paid to them by the widow for their respective interests in the land. The cause was transferred to the equity docket, and progressed to a determination upon the pleadings and proof. It was adjudged by the decree that the plaintiffs recover interests in the land in the proportion to which they were entitled as heirs of J. C. Davie. Certain conditions were imposed upon the recovery, which we deem it unnecessary to state. Each party appealed.

The pleadings contain a mass of matter not set out, but we have found certain issues that are controlling, and have set out in substance the allegations pertinent to them, omitting such matter as might confuse, and could not elucidate their determination. There is no practical disagreement as to the material facts. They are as follows: J. C. Davie owned the land in

controversy, and in November, 1869, sold it—a part
to one person, and the remainder to others.    He ex-
ecuted two bonds conditioned to convey title when the
agreed price should be paid, let the purchasers into pos-
session, and took notes for the purchase money, aggre-
gating $10,000.    On the 13th day of January, 1870, he
died intestate and without issue, but leaving a widow.
His heirs were a sister, Mrs. Finch, a brother, O. N.
Davie, and the children of two brothers, George and
Ashborn, who had previously died.    The plaintiffs are
the children of Mrs. Finch, who subsequently died in-
testate, and two of three children of the brother Ash-
born Davie.    On his deathbed, J. C. Davie attempted to
devise his entire estate to his wife, but the attempt
failed by reason of a failure to execute his will in
proper form.    On the 10th of February, 1870, the sur-
viving brother, the nephew solely interested by right of
one of the deceased brothers, and one of three children
interested by right of the other deceased brother, con-
veyed their several interests in the estate to the widow,
the consideration being the accomplishment of the ex-
pressed desire of the intestate.    The widow thus ac-
quired two whole shares and a third of one of the other
two.    In February, 1871, she visited Tennessee, where
those owning the shares not acquired resided, for the
purpose of acquiring them.    She solicited their in-
terests as a gift, but subsequently agreed upon a pur-
chase at the rate of $1,000 per whole share.    Mrs. Finch
thereupon executed to J. D. Garrison a power of attorney,
which was intended to authorize him to transfer all her
interest in the estate, and collect and receipt for the
$1,000.    He received that sum and paid it to her, and
on the 7th of July, 1871, executed a deed to the widow,
conveying all the interests of Mrs. Finch in certain de-
scribed lands, and also in all the property described
in the inventory of the administrator.    The plaintiffs'
witnesses prove that Mrs. Finch actually sold all her
interest in the estate. E. N. Davie, being one of the three
claiming by right of Ashborn Davie, agreed with the

widow for a sale of his interest at $385, and on the 4th of December, 1871, executed a power of attorney which authorized B. F. Elder to execute proper conveyances to land, in pursuance of which Elder, on the 10th of January, 1872, executed a deed for the sum thus agreed upon, conveying to the widow all the right, title, and interest of said E. N. in the estate of the said J. C., including all personal property.     Mrs. M. E. Clements was then a minor, and the sale of her interest was made by her guardian, who gave bond to the widow, conditioned that the minor on coming of age would make a transfer of all her interest in the estate.     The guardian, who was her mother, collected the price agreed upon, and applied it to her use—a part of it after she was married.     She knew of it, certainly, as early as 1880, and it is fairly inferable that she knew it much earlier. In 1877 she came of full age.     In the fall of 1870 the defendant administered on the estate, received the notes given for the land, and included them in the inventory made and filed by him as administrator.     He turned the notes over to the widow to enable her to make the trade with the holders of the title-bonds; believing, as he testified, that she was entitled to a part of them as dower, and had acquired the other interests by the transfers from the distributees.     On the 4th of March, 1871, after the widow had returned from Tennessee, where she agreed upon the purchase of the interests now claimed by the plaintiffs, she bought from the vendees of her husband their interest in the land created by the title-bonds, and took assignments thereof, paying to the purchasers just what they had paid, and surrendering their notes.     Upon receiving an assignment of the bonds the widow went into possession, and she and those claiming under her have held possession continuously since, and have made lasting and valuable improvements, estimated as worth $15,000.  The administrator filed accounts current in 1877 and 1879, and in 1881 made his final settlement.  He charged himself with the notes, and took credit for them as having

been turned over to the widow. No act was done by any of the parties to disaffirm the transfers made by them to the widow until this suit was brought, in May, 1884, an interval of 13 years after the sales, and of nearly 7 years after Mrs. Clements came of age. The defendant married the widow in 1874, and she died in 1881. Subsequently a writing was admitted to probate by the probate court of White County, whereby she devised to the defendant the lands in controversy. The validity of the will is denied by the plaintiffs.

*S. L. Cockroft,* for appellant.

*J. M. Battle, J. E. Gatewood,* and *J. N. Cypert,* for appellee.

HEMINGWAY, J., (after stating the facts). The sale in 1869 divested J. C. Davie of all beneficial title to the land. He held the legal title as a security for the purchase money, but his property was in the notes, not in the land. As the land had passed from him, and he was not the owner, it could not descend upon his death to his heirs. The plaintiffs could therefore recover no share in it by reason merely of his death and their heirship. But it is said that the notes given for the purchase money belonged to the estate of which plaintiffs were distributees; that said notes were without authority delivered by the administrator to the widow, and constituted almost the entire consideration for the assignment of the title-bonds to her; and that by reason thereof she held the estate created by the bonds for the benefit of those interested in the notes. The administrator was not authorized to purchase the land for the benefit of the estate, or to acquire title for the heirs by surrender of the notes. If he diverted assets of the estate by an unlawful delivery to the widow, it may be that those interested in the estate could have demanded that she restore them, or that they could have followed the proceeds into other property, in case the notes had been converted; but, if such right would have arisen upon the condition indicated, it would not have vested any title to the land, but conferred only an equity to charge

the land with the payment of the notes. Whether the plaintiffs could assert that right in this proceeding after the administrator had fairly settled the estate, and accounted, though improperly, for the notes, is a question not presented; for the record shows that the plaintiffs have parted with whatever rights they had in the notes, and are in no position to question the conduct of the administrator. The plaintiff E. N. Davie, by his deed of the 10th of January, 1872, conveyed and sold to the widow all his interest in the estate, and this conveyance was but the consummation of a sale actually made about a year before. How he can find any pretext to claim an interest in the notes we cannot conceive.

Mrs. Finch, the mother of the plaintiffs Garrison, Halloman, McCutchen, and Finch, early in 1871 sold to the widow all her interest in the estate for $1,000, which was paid to her; and, by her attorney in fact, she executed a conveyance for the purpose of consummating the sale on the 7th day of July, 1871. The description in the conveyance is about as obscure as one could be, but its meaning can be ascertained, and it appears that the property conveyed was that set out in the inventory of the administrator. But it is said that a married woman cannot convey property by attorney. The reply is that she can dispose at least of her personalty, as a *feme sole*. Much of the business of the country is conducted by married women, and the result of the argument would be to invalidate all sales made for them by clerks or other agents—a position without support. But, independent of the deed, a parol sale was made months before, and the agreed price paid. The notes were delivered to the widow as entitled to all the estate, and the administration subsequently settled. For more than 13 years after the sale, no effort was made to disaffirm it, and no reason shown to excuse the delay. If there ever was any ground for Mrs. Finch or those claiming under her to avoid the sale, the unexplained lapse of time bars it. The same may be said as to the rights of E. N. Davie.

The claim of Mrs. Clement presents more color of merit; for she was a minor when the sales were made to the widow, and her interest is claimed only by virtue of the attempted sale of her guardian. There is no proof that the guardian was authorized to make the sale, and we infer from the circumstances that she was not. But the widow paid for her interest, the money went to her use, and, as the evidence discloses, she knew the facts. She came of full age in August, 1877, before the administration of the estate was settled. For nearly seven years she did nothing to disaffirm the sale. Acquiescence for that time must be held an implied ratification of the guardian's sale of her interest.

The widow, therefore, acquired the interest of all the heirs in the notes, and, having acquired the land subject only to the lien of the notes, her title became perfect; and the plaintiffs are entitled to no relief as against those to whom her rights have passed.

It was suggested in the argument that some of the plaintiffs were entitled to recover as heirs of the widow, in case she was found to have owned the land. No such claim was asserted in the pleadings, or appears to be sustained by the proof. The mother of two of the plaintiffs is an heir of the widow; but, as she is living, they cannot have a recovery upon her heirship. Besides, it appears that the widow made a will, which was admitted to probate by the probate court of White County; and whether it was properly admitted is a question that cannot be reviewed in this collateral proceedings, nor at the suit of persons not interested in it. But it is contended that the will was not in fact admitted to probate by the probate court, but by the clerk of the court in vacation, and that the court subsequently only caused an order to be entered, reciting that the will had been fully proved before the clerk, and that the same was approved by the court, and directing that the will be recorded as such. This, it is contended, was not an order admitting the will to probate, but simply approving the clerk's action. The argument

has no regard for the effect of the order, but rests alone upon its form. It is too technical for our approval. *Petty* v. *Ducker,* 51 Ark. 281, 11 S. W. Rep. 2. It is admitted that by the will the defendant was to have the lands, and so long as the judgment of a court of competent jurisdiction, admitting it to probate, is unreversed, its terms must control the course of the land. *Dowell* v. *Tucker,* 46 Ark. 438.

From the views expressed, it follows that the plaintiffs were entitled to no relief, and that the defendant was entitled to have the legal title to the land vested in him. The judgment granting the relief to the former and denying it to the latter was therefore erroneous in each respect. Reversed and remanded, with directions to enter judgment in accordance with this opinion.