## PULASKI FEDERAL SAVINGS & LOAN ASSOCIATION ET AL *v.* CONWAY LEE CARRIGAN
### ET AL

5-4312                                      419 S. W. 2d 813

Opinion delivered October 30, 1967

*Wright, Lindsey & Jennings,* for appellants.

*Owens, McHaney & McHaney,* for appellees.

GEORGE ROSE SMITH, Justice. This is a suit by the appellees, Carrigan, his wife, and their mortgagee, to enjoin the appellants from levying execution upon Lot 23 of Chicot Terrace Addition to Little Rock, which is owned by the Carrigans. The chancellor granted the injunction, holding that the deficiency judgment under which the appellants were about to proceed did not constitute a lien against Lot 23. That is the issue here.

All the facts are stipulated. Lot 23 was formerly owned by Roy Stillman. On December 9, 1965, Stillman and Mr. and Mrs. T. A. Hale executed a written offer-and-acceptance agreement by which Stillman agreed to sell the property to the Hales. On March 23, 1966, Pulaski Federal obtained a personal judgment against Stillman and his wife in a foreclosure suit involving other property. That property was sold pursuant to the decree on May 5, 1966, leaving a deficiency judgment for $2,644.07, which was later assigned to the other appellant, Southern Mortgage Insurance Corporation.

On April 20, in the interval between the entry of the foreclosure decree and the entry of the deficiency judgment, Stillman performed his contract with the Hales by conveying Lot 23 to them by warranty deed. Later on the Hales sold the land to the Carrigans. This suit for injunctive relief was brought by the Carrigans when the appellants levied execution on Lot 23 under their deficiency judgment and served notice that the property would be sold by the sheriff.

The chancellor was right. A judgment lien attaches only to the judgment debtor's interest in the land, "and, if that interest be subject to any infirmity or condition by reason of which it is eliminated or ceases to exist, the lien attached thereto ceases with it. . . . A judgment lien is subject to existing equities of third parties in the land." *Snow Bros. Hdw. Co.* v. *Ellis,* 180 Ark. 238, 21 S. W. 2d 162 (1929).

More than three months before Pulaski Federal obtained its foreclosure decree Stillman had bound himself to sell Lot 23 to the Hales. There is no contention that the Stillman-Hale contract was anything other than a good-faith transaction. Hence Pulaski Federal's judgment lien was subject to that contract and was defeated when Stillman conveyed the lot to the Hales.

The entire thrust of the appellants' argument is that the Stillman-Hale contract was not a present sale

of the land, because the agreement contemplated that various steps were to be taken in the future, such as the furnishing of an abstract of title, the obtaining of FHA financing, the execution of a deed by Stillman, the giving of a note by the Hales, and so forth. No matter. Contracts for the sale of land nearly always leave one or more steps, such as the examination of title, to be taken in the future, but the seller is nevertheless bound to perform his agreement. See *McClain* v. *Alexander,* 235 Ark. 64, 357 S. W. 2d 1 (1962); *Bushmeyer* v. *McGarry,* 112 Ark. 373, 166 S. W. 168 (1914); *Meyer* v. *Jenkins,* 80 Ark. 209, 96 S. W. 991 (1906). If Stillman had attempted to evade his obligation the Hales could have obtained specific performance. It follows that the Hales' equitable rights were superior to Pulaski Federal's subsequent judgment lien, because, as we have said, that lien was "subject to existing equities of third parties in the land."

Affirmed.

FOGLEMAN, J., dissents.

JOHN A. FOGLEMAN, Justice, dissenting. I am unable to agree with the result reached by the majority in this case. I agree that a judgment lien attaches only to the judgment debtor's interest in land. I am not in agreement as to what that interest was under the facts in this case. I do not believe that this court has extended the rule that a vendor of real estate retains a legal title only to secure the payment of the purchase money, while the equitable title is in the purchaser, making the vendor's property immune from execution on a judgment rendered after a sale of the property under the contract in this case. It seems to me that the Arkansas decisions have gone quite a long way in this field—further than in most other states.[1] I feel that this case is an undesirable extension of that rule, permitting an owner of

[1]See 43 Iowa Law Review 366—374; 2 Freeman on Judgments, 5th Ed. § 964; Annot., 57 L. R. A. 643, at 646; *Reid* v. *Gorman,* 37 S. D. 314, 158 N.W. 780.

real property to facilitate putting assets in the form of real estate beyond the reach of creditors. Our rule is a rule of property, as far as it has gone. I would not disturb the rule, but where the extension of such a rule to an entirely new set of facts is concerned, we are not bound by the rule of property and should endeavor to make our statutes mean what they say. The mere fact that ours is a minority rule should not require us to limit the application of a rule of property, but it should cause us to carefully examine any extension that we are asked to make. I find no difficulty in distinguishing this case from those in which we have applied the rule, and think that there is no sound reason why we should not hold this property subject to the judgment lien in this case.

I do not believe there is any Arkansas case wherein an executory contract with a forfeiture clause, in which the vendor does not *sell*, but only *agrees to sell* and the purchaser does not *purchase,* but only *agrees to purchase*, and in which the purchaser is not put in possession, has been held to create such an estate in the purchaser as to deprive the vendor of such title as to make the property subject to a judgment lien.[2] The holding of the majority enables an embarrassed debtor to put real estate beyond the reach of creditors and, thus, make the collection of just debts difficult. It unnecessarily enables such a debtor to convert real estate into cash so that it is at least difficult for the creditor to reach. I see no valid reason why the interest of Stillman in this property should not be subjected to the lien of the judgment, subject, perhaps, to the right of the contracting purchaser to have paid the purchase price to an execution purchaser and demanded a deed, or to have paid the judgment debtor and withheld the amount paid from the balance of the purchase price. The abstract of title would have revealed the judgment to the purchaser.

[2]The textwriter in 55 Am. Jur., Vendor & Purchaser, § 357, says: "An executory forfeitable contract for the purchase of land vests no element of title, either legal or equitable." P. 784.

Our statute makes all real estate whereof the defendant was *"seized in law or equity"* on the day of rendition of the judgment subject to execution. Ark. Stat. Ann. § 30-201 (Repl. 1962). "Seize" means: "To put in possession, invest with fee simple, be seized of or in, be legal possessor of, or be holder in fee simple." Black's Law Dictionary, 4th Ed. Possession is the prime factor of seisin. See Black's Law Dictionary, 4th Ed., page 1524. Although I think that Stillman was seized both in law and in equity of the real estate in question, I do not think that it can be said that he was not seized in law. His possession of the property, without any actual sale or conveyance, should make this property subject to execution.

I submit that the rule applied by the majority grew out of decisions in which a bond for title, not an executory contract with a forfeiture clause, was involved.

The entire concept of the fictional relationship of mortgagee and mortgagor ascribed to vendor and purchaser, on which the rule is based, arose out of bonds for title, something entirely different from the executory contract of sale with a forfeiture clause, such as we have here. See *Smith* v. *Robinson*, 13 Ark. 533. The legal fiction has been applied to executory contracts of sale where possession was given under the contract. *Williams* v. *Baker*, 207 Ark. 731, 182 S. W. 2d 753.

The bond for title, once in common use in conveyancing when lands were sold upon credit, (See *Kelly* v. *Dooling*, 23 Ark. 582; *Schearff* v. *Dodge*, 33 Ark. 340) has fallen into disuse.

The common form of the bond for title recited that the vendor had *bargained and sold* the real estate to the purchaser and would deliver a proper deed upon payment of the balance of the purchase price. See Arkansas Form Book, Stayton; *Smith* v. *Robinson*, 13 Ark. 533. On the other hand, the vendor in an ordinary contract for sale of real estate *agrees to sell* and the pur-

chaser *agrees to buy.* It is implicit in the bond for title that the entire transaction shall be as complete as if there had been a conveyance by deed. *Smith* v. *Robinson, supra.* Generally, possession of the land involved was delivered to the purchaser under a bond for title, and it was held that an action for ejectment against a defaulting purchaser would lie in favor of a vendor, at least until the adoption of our statute permitting equitable defenses to be interposed at law. *Smith* v. *Robinson,* 13 Ark. 533; *Refeld* v. *Ferrell,* 27 Ark. 534; *McGehee* v. *Blackwell,* 28 Ark. 27; *Cleveland* v. *Aldridge,* 94 Ark. 51, 125 S. W. 1016; *Higgs* v. *Smith,* 100 Ark. 543, 140 S. W. 990; *Williams* v. *Baker,* 207 Ark. 731, 182 S. W. 2d 753; *Weaver* v. *Gilbert,* 214 Ark. 800, 218 S. W. 2d 353. A bond for title may be distinguished from an executory contract of sale with forfeiture clause in other ways.

The bond for title was something more than an executory contract to sell. It imported a present sale, which passed the ownership and beneficial interest in the land to the purchaser, usually accompanied with possession or the right of possession as against the vendor. *Moore & Cail* v. *Anders,* 14 Ark. 628; *Harris* v. *King,* 16 Ark. 122; *Maxwell* v. *Moore,* 18 Ark. 469.

Upon default of vendee, vendor must proceed to foreclose the purchaser's equity of redemption under a bond for title, but not under an executory contract for sale with forfeiture clause. *Smith* v. *Robinson, supra; Newsome* v. *Williams,* 27 Ark. 632; *White* v. *Page,* 216 Ark. 632, 226 S. W. 2d 973.

A default under a bond for title does not effect a forfeiture. *Fairbairn* v. *Pofahl,* 144 Ark. 313, 222 S. W. 16. An executory contract to sell with a forfeiture clause does. *Harrison* v. *Mobley,* 211 Ark. 772, 202 S. W. 2d 756; *White* v. *Page, supra.*

A vendee under a bond for title may encumber or alienate the land, subject to the lien for the balance of

the purchase money. *Smith* v. *Robinson*, 13 Ark. 533.

The vendee under a bond for title is liable for taxes assessed on the lands after the sale *Hall* v. *Denckla*, 28 Ark. 506.

The purchaser under an executory contract where purchaser "agrees to purchase" is not liable for such taxes, but vendor is until the date the sale is consummated by payment and execution of deed. *Tate* v. *Ellis*, 201 Ark. 1185, 147 S. W. 2d 34.

A vendee holding a title bond from the owner may support an action to quiet title and recover possession from an adverse claimant. *Norman* v. *Pugh*, 75 Ark. 52, 86 S. W. 833. He may also devise it by will. *Stubbs* v. *Pitts*, 84 Ark. 160, 104 S. W. 1110.

It appears that it was first held by this court that the interest of the vendor who had given *a bond for title* was not subject to execution in *Strauss* v. *White*, 66 Ark. 167, 51 S. W. 64. In that case, the vendee had been placed in possession of the land before the judgment was rendered in favor of the execution purchaser. This court took this possession into consideration in arriving at the result, holding that the vendee's *possession* was notice to the judgment plaintiff and execution purchaser of the title or claim under which the vendee held.

Virtually all of the cases in which the bond for title is credited with creation of a mortgagor-mortgagee relationship with the resulting legal fiction as to title show clearly that the purchaser was put in possession or had the right to possession. See *e. g.*, *Moore & Cail* v. *Anders*, 14 Ark. 628; *Maxwell* v. *Moore*, 18 Ark. 469; *Lewis* v. *Boskins*, 27 Ark. 61; *Hall* v. *Denckla*, 28 Ark. 506; *Garrett* v. *Williams*, 31 Ark. 240; *Roach* v. *Richardson*, 84 Ark. 37, 104 S. W. 538; *Hill* v. *Heard*, 104 Ark. 23, 148 S. W. 254, 42 L.R.A. (n.s.) 446; *Davie* v. *Davie*, 154 Ark. 633, 18 S. W. 935; *Alexander* v. *Mason*, 216 Ark. 367, 225 S. W. 2d 680.

As a matter of fact, some of them hinge the legal fiction that the purchaser becomes the equitable owner of the land and the vendor holds the legal title only as security for the payment of the balance of the purchase money, at least in part, upon the purchaser's being put in possession. See *Stubbs* v. *Pitts,* 84 Ark. 160, 104 S. W. 1110; *Warren* v. *Henson,* 171 Ark. 162, 283 S. W. 19; *Fine* v. *Dyke Bros.,* 175 Ark. 672, 300 S. W. 375. Where the fiction or doctrine is applied to executory contracts for sale of real estate, the purchaser almost always has been put in possession of the premises. See *Judd* v. *Rieff,* 174 Ark. 362, 295 S. W. 370, and other cases cited in this opinion.

In all of the cases cited by appellee either the purchaser was put in possession of the land or the vendor had put his conveyance beyond his control. All may be distinguished from this case.

In *State Bank of Decatur* v. *Sanders,* 114 Ark. 440, 170 S. W. 86, the purchaser under the oral contract took the actual control, possession and management of the farm and made improvements. While the vendor had not executed a deed to make the sale fully consummated, he had an election to either take a mortgage on other land as security for the balance of the purchase money or reserve a vendor's lien on the property sold. He did not make the election until after a judgment was rendered against him and the judgment creditor unsuccessfully asserted the lien of the judgment against the purchaser's grantee.

In *Howes* v. *King,* 127 Ark. 511, 192 S. W. 883, the vendor gave a deed in which a vendor's lien was retained. This lien was not subject to execution. The purchaser was in possession of the land at all times. After the death of vendor, the purchaser arranged for a loan to pay part of the purchase money notes and gave a mortgage as security. He then conveyed the land to the vendor's legatee, who released the vendor's lien and immediately reconveyed the land to the original purchaser,

but retained a lien for the balance of the purchase money. The court said the various steps were parts of the same transaction and constituted but one act, and that there was no moment when the legatee-grantor owned the land free from the conditions of the transaction or could have conveyed them, except subject to these conditions. The court has later referred to the legatee-grantor as only a conduit in the title. See *United Loan & Investment Co.* v. *Nunez*, 225 Ark. 362, 282 S. W. 2d 595, where a "straw man" in a transaction between husband and wife was held not to have title subject to judgment lien. In *Snow Bros. Hardware Co.* v. *Ellis*, 180 Ark. 238, 21 S. W. 2d 162, the vendor had placed a deed in escrow under which he had no power of recall. Thus, he placed the delivery of the conveyance beyond his own control, unless he paid a certain note due one year after the date of the escrow agreement. The "purchaser" had only to deposit a fixed amount of money with the escrow agent to receive the deed, in case of default by the vendee. The court compared this transaction to a bond for title and said that the vendor *had conveyed* his interest in the land on condition.

The purchaser in this case offered to buy. Earnest money was paid. It was to be forfeited if the buyer failed to fulfill his obligation, without prejudice to the assertion of any other *legal* rights by seller because of the *breach*. Possession was to be given after the closing date, which seems to have been upon approval of an FHA loan to purchaser. Seller was to pay taxes due on or before the closing date. There is nothing in the contract to remotely suggest a contemporaneous sale of the property. Certainly this purchaser had nothing—no title which could be alienated or encumbered by him.

I would dissolve the injunction and dismiss the cause of action.