INDEPENDENCE FEDERAL SAVINGS AND LOAN
ASSOCIATION *v.* Roy C. DAVIS et al

82-202                                    646 S.W.2d 336

Supreme Court of Arkansas
Opinion delivered February 14, 1983
[Supplemental Opinion on Denial of Rehearing March 21, 1983.]

*Hoover, Jacobs & Storey,* by: *Victor A. Fleming,* for appellant.

*David H. White* and *Lambert & Brown,* for appellees.

ROBERT H. DUDLEY, Justice. In 1970 we held that a federal savings and loan association must demonstrate that its security is impaired before it will be permitted to accelerate the maturity date of a loan and declare the entire debt due if the property securing the loan is sold or otherwise transferred. *Tucker* v. *Pulaski Federal Savings & Loan Ass'n,* 252 Ark. 849, 481 S.W.2d 725 (1972). Four years later the Federal Home Loan Bank Board issued a regulation which, in part, provides:

> [A federal savings and loan] association continues to have the power to include, as a matter of contract between it and the borrower, a provision in its loan instrument whereby the association may, at its option, declare immediately due and payable sums secured by the association's security instrument if all or any part of the real property securing the loan is sold or transferred by the borrower without the association's prior written consent. Except as [otherwise] provided in . . . this section . . . , exercise by the asociation of such option (hereafter called a due-on-sale clause) shall be exclusively governed by the terms of the loan contract, and all rights and remedies of the association and borrower shall be fixed and governed by that contract.

12 C.F.R. § 545.8-3(f) (1982).

The issues in this case are whether our holding is incompatible with the federal regulation and, if so, does the preemption doctrine apply? We answer both questions in the affirmative and, accordingly, reverse the decision of the trial court. The Court of Appeals certified the case to this Court since it involves an issue of significant public interest and a legal principle of major importance. Rule 29 (4) (b).

Appellees, Roy and Katherine Davis, borrowed $34,800 from appellant, Independence Federal Savings and Loan

Association, a federally chartered savings and loan association. As evidence of the debt and security for its payment the Davises executed a promissory note and a real estate mortgage which contained the following due-on-sale clause:

17. Transfer of the Property; Assumption. If all or any part of the Property or an interest therein is sold or transferred by Borrower without Lender's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this Mortgage, (b) the creation of a purchase money security interest for household appliances, (c) a transfer by devise, descent or by operation of law upon the death of a joint tenant or (d) the grant of any leasehold interest of three years or less not containing an option to purchase, Lender may, at Lender's option, declare all the sums secured by this Mortgage to be immediately due and payable. Lender shall have waived such option to accelerate if, prior to the sale or transfer, Lender and the person to whom the Property is to be sold or transferred reach agreement in writing that the credit of such person is satisfactory to Lender and that the interest payable on the sums secured by this Mortgage shall be at such rate as Lender shall request. If Lender has waived the option to accelerate provided in this paragraph 17, and if Borrower's successor in interest has executed a written assumption agreement accepted in writing by Lender, Lender shall release Borrower from all obligations under this Mortgage and the Note.

On November 11, 1979, the Davises by contract sold the real estate to Richard and Adelia Swink. On January 11, 1980, the Swinks by contract, in turn, sold the real estate to Johnny and June Wildman. The contracts of sale provided for delivery of a warranty deed upon the payment of all indebtedness. The appellant was not notified and did not consent to the contracts of sale.

Appellant learned of the sales and treated the due-on-sale clause as violated. It notified the Davises of the acceleration of the date of maturity of the debt and that the entire debt was due. When the Davises refused to pay, appellant filed suit for acceleration of the maturity of the

debt, for judgment principal and accrued interest on the note plus attorney's fees and costs and for foreclosure on the mortgage securing the debt. The trial court held that the sales contracts violated the due-on-sale clause but, citing *Tucker,* refused to accelerate the maturity of the debt as there was no proof that appellant's security had been impaired.

The only restrictions specified in the Federal Home Loan Bank Board's regulation are contained in 12 C.F.R. § 545.8-3(g) (1982) as follows:

> (g) Limitations on the exercise of due-on-sale clauses. With respect to any loan made after July 31, 1976, on the security of a home occupied or to be occupied by the borrower, a federal association: . . .(3) waives its option to exercise a due-on-sale clause as to a specific transfer if, before the transfer, the association and the person to whom the property is to be sold or transferred . . . agree in writing that the person's credit is satisfactory to the association and that interest on sums secured by the association's security interest will be payable at a rate the association shall request. Upon such agreement and resultant waiver the association shall release the existing borrower from all obligations under the loan instruments, and the association is deemed to have made a new loan to the existing borrower's successor in interest.

Under the Board's regulations, a federal association's right to accelerate a loan is not limited to cases where the lender's security is impaired. The regulations, therefore, are incompatible with our decision in *Tucker, supra.*

In June, 1982, the Supreme Court of the United States, in a well reasoned opinion by Justice Blackmun, ruled on this precise issue. *Fidelity Federal Savings & Loan Ass'n.* v. *De La Cuesta,* ___ U.S. ___, 50 U.S.L.W. 4916 (U.S. June 23, 1982). In that case, De La Cuesta and others purchased real estate in California from a person who had borrowed money from Fidelity Federal Savings and Loan Association. As security for the loan, the original borrower had given Fidelity a deed of trust on the property containing a due-on-

sale clause. Fidelity was not notified prior to the purchases from the original borrower and when it learned of the transfers it exercised its option to accelerate the date of maturity of the loan. When the loans were not paid, Fidelity instituted nonjudicial foreclosure proceedings as authorized by California statutes. De La Cuesta and the other purchasers then filed suit against Fidelity in California State Court, asserting that the due-on-sale clause could not be enforced "unless the lender can demonstrate that enforcement is reasonably necessary to protect against impairment to its security or the risk of default." *Id.* at ___, 50 U.S.L.W. at 4918. De La Cuesta's suit was based upon a doctrine enunciated in *Wellenkamp* v. *Bank of America,* 21 Cal.3d 943, 582 P.2d 970 (1978), a case in which California reached the same result that we had reached in *Tucker, supra.*

In *De La Cuesta* the California trial court held that the federal government had preempted the subject of regulation of federal savings and loans precluding the extension of their *Wellenkamp* doctrine to federal savings and loans. The Court of Appeal reversed, however, concluding that *Wellenkamp* was controlling. According to the Court of Appeal, Congress had not expressly or impliedly preempted state due-on-sale law nor fully occupied the field of federal savings and loan regulation. ___ U.S. at ___, 50 U.S.L.W. at 4918.

The Supreme Court of the United States then reversed the Court of Appeal, holding that the Federal Home Loan Bank Board's due-on-sale regulation bars application of the *Wellenkamp* rule to federal savings and loan associations. *Id.* at ___, 50 U.S.L.W. at 4924.

According to the Supreme Court in *De La Cuesta,* the Federal Home Loan Bank Board was vested with plenary authority in 1933 to administer the Home Owners' Loan Act of 1933. The Board, which has the authority to promulgate regulations governing the powers and operations of federal savings and loan associations, promulgated the due-on-sale regulations in 1976 in an attempt to preserve "the financial security and stability of federal associations . . . [which] would be endangered if . . . the security property is

transferred to a person whose ability to repay the loan and properly maintain the property is inadequate". *Id.* at ___, 50 U.S.L.W. at 4917. Additionally, the Court pointed out that in the preamble to the final publication of the regulation, the Board emphasized that "[f]ederal associations shall not be bound by or subject to any conflicting State law which imposes different . . . due-on-sale requirements". *Id.*

The Court discussed the language and history of the Home Owners' Loan Act and found that both indicate that the Board was authorized to regulate a system of federal savings and loan associations. *Id.* at ___, 50 U.S.L.W. at 4917. In addition, Congress had delegated power to the Board expressly for the purpose of creating and regulating those associations in order to ensure that the complete federal system would remain financially sound and able to supply financing nationwide for home construction. *Id.* at ___, 50 U.S.L.W. at 4921. The Court held that, consistent with that purpose, the Board reasonably exercised its authority in promulgating the due-on-sale regulation. *Id.* at ___, 50 U.S.L.W. at 4923-24.

The Court found *Wellenkamp* and the regulation to be in direct conflict and applied the preemption doctrine which is found in the Supremacy Clause, U.S. Const., Art. VI, Cl. 2. Similarly, our case of *Tucker* and the regulation are incompatible. Thus, it is clear that our rule in *Tucker* can no longer apply to federal savings and loan associations in Arkansas. Therefore, we reverse on direct appeal.

Appellees contend that they are entitled to affirmative relief in this Court. However, since there was no notice of cross-appeal we do not consider the argument for affirmative relief. *Elcare, Inc.* v. *Gocio,* 267 Ark. 605, 593 S.W.2d 159 (1980).

Supplemental Opinion on Denial of Rehearing
delivered March 21, 1983

ROBERT H. DUDLEY, Justice. The appellees' petition for rehearing is denied, but in their petition the appellees have called attention to an error of appellate procedure in the original opinion.

The trial court held for the appellees and the appellant gave notice of appeal. The appellees gave no notice of cross-appeal but in their Point III argue: "The Chancellor Erred In Determining That The Contracts For Deed Entered Into By Appellees Violate Paragraph 17 Of The Mortgage." Our original opinion erroneously states that appellees were seeking affirmative relief but gave no notice of cross-appeal. However, a notice of cross-appeal is necessary only when an appellee is seeking something more than he received in the lower court. *Moose v. Gregory,* 267 Ark. 86, 590 S.W.2d 662 (1979). Here appellees' point is that the chancellor erred in his reasoning but reached the right result. Appellees were asking only that the chancellor be affirmed and therefore no notice of cross-appeal was necessary. Thus, we were in error in refusing to consider the issue.

We now consider the point but find it to be without merit. The due-on-sale clause was triggered "[i]f all or any part of the Property or an interest therein is sold or transferred by Borrower without Lender's prior written consent . . . " The appellees Davis sold their equity by contract to the appellees Swink for $1,719.00 and transferred the right of possession to them. Under the terms of the executory contract steps remained to be taken in the future, but the sellers were nevertheless bound to perform their agreement. The buyers acquired a substantial interest in the property. *See Pulaski Federal Savings & Loan Ass'n.* v.

*Carrigan,* 243 Ark. 317, 419 S.W.2d 813 (1967). Under the terms of the mortgage the transfer of a substantial interest in the property was sufficient to accelerate the maturity date of the loan and declare the entire debt due.

The petition for rehearing is denied.